We'll hear the next case, NB and CB v. New York City Department of Education. Good morning, Your Honors. If it pleases the Court, my name is Stephen Goldstein of Counsel to the Law Offices of H. Jeffrey Marcus. This is a case about an 8-year-old little girl with autism. She has sensory processing and allergies, and it's about her educational program for the 2012-2013 school year. This is a child who has all of the difficulties that are generally associated with a child with autism, such as very limited verbal abilities. She becomes easily overstimulated, frustrated, and her frustration causes her to cry and most people would interpret as misbehavior, when it's really that she cannot help herself. She has, throughout her school time, or throughout her time in school, consistently responded positively to only one specific educational methodology, the DIR methodology, and when she was placed by the DIR in a program in which she did not, sorry, when she was placed by the New York City Department of Education in a program where she did not receive DIR, she regressed significantly. So this is a case that's about the educational methodology. It's also a case, though, about the Department of Education, the New York City Department of Education, not dealing in a straightforward manner with the parents. When IEPs, individual education plans, are developed, the process is supposed to be collaborative. The IDEA, the Individuals with Disabilities Education Act, requires school districts provide parents with a genuine and meaningful role in planning for their children's education. It is our position and our belief that that's not what happened in this case. Specifically, there was a committee on special education meeting, an IEP meeting, in May of 2012 to plan for this child's education. The father attended the meeting, and along with him were two individuals from the school that the child was attending at the time, a social worker who had been working with the family, as well as the child's classroom teacher. Also present at the meeting were three individuals from the New York City Department of Education, none of whom had ever met or worked with the child. So the only information that the IEP team, the CSE team, had to consider when planning for the child's education was one report that it pulled from her file from the Rebecca School, the school that she was attending at the time, and the information that was provided by the three individuals who knew her. Although it had a full file with other reports, nothing else was looked at, so it was only that information that was considered. Based on the... How do you know that nothing else was looked at? We have the testimony of Dr. Craig Czarnecki, who was a representative of the New York City Department of Education, who testified during the impartial hearing and stated that the only document that was being reviewed was the, I believe it was a December 2011 progress report from the Rebecca School. Weren't the goals that the IEP adopted almost the same as the goals in the Rebecca progress report though? Our position that the goals that were in the IEP were almost verbatim, and as Judge Torres found in her decision below, the goals, although there was certain language that was removed from the goals, the goals that seemed to adopt and follow a methodology that's used at the methodology can only be implemented in a certain type of environment in which the student was provided with a two-to-one adult-to-student ratio, which is not the type of environment that the DOE provided to her. I know that you think that using a lot of the report from Rebecca School means they meant to adopt those methodologies, not just the goals, but the goals were this individualized attention. So the classroom setting is really three-to-one. But then there's all these other things that are happening, right? There's occupational therapy and speech therapy. I mean, those are individual, right? So it's not just adult interaction being three-to-one in the classroom. There's more than that. There is more than that, Your Honor. However, for most of the day, the child is in that classroom, would be in that classroom that the Department of Education recommended with the three-to-one ratio. The related services, the occupational therapy, the speech therapy, the counseling only took up a part of her day. In addition, the Rebecca School report and the information that was provided to the parent Well, we're looking at goals here. So what you're saying is you want the IEP to have a certain methodology, whereas DOE wants it more open than that. And isn't it a good thing that if something else is working, that you do that something else to get to the goal? I would agree that it's a good thing that if something else is working. However, there was no indication in this child's file or in anything that was provided to the Department of Education's committee that anything else was working. In addition, Judge Torres found in her decision that the goals, although they scrubbed the that methodology is what was needed. There was no indication anywhere in the record that that's the methodology that could or would have been provided to this child at the school. We also have a record showing that these are concerns that were raised by the parent and the teachers at the school talking about the need for that methodology. To clarify, your two challenges to the IEP are no DIR required and wrong class size ratio. And then your other challenges relate to whether the school could accomplish the rest of the goals. Well, that's a bit of, it's, that's, what it really is is that it's, the IEP we believe actually recommended DIR, which could not be implemented at the school, in addition, and the class size. In addition- I asked about the class size or the teacher para-student ratio. It was only her teacher, Mucerino, said it was necessary. The other witnesses from Rebecca said it might be better along those lines. Am I wrong about my read of that record? I would have to double check. I believe that you are right about Ms. Mucerino, but everybody else that testified said that the DIR methodology can only be implemented with that two to one ratio. In addition, what I, excuse me, in addition, as I started to say with some of the other challenges that go to the school, the way the DOE argues in its papers and its reply, it's saying that because the other issues, the sensory issues and some of the other things, the IEP didn't mandate that they be accommodated, the school doesn't have to respond to them. The issue is, though, it's, they had to be addressed somewhere. If they weren't addressed in the IEP, that makes the IEP flawed. If they weren't addressed at the school, that makes the school flawed. Thank you, you've saved some time for rebuttal. Thank you, your honors. May it please the court. I'm Daniel Monson Brown, Assistant Corporation Counsel on behalf of the Apelli New York City Department of Education. This case is a perfect example of an SRO reviewing the evidence presented to him and making findings with respect to difficult questions of educational policy, in particular here, the two questions that your honor have been probing already, the question of a particular educational methodology and the question of the appropriate class size and staffing ratio. The SRO's findings on these difficult questions are entitled to substantial deference. Here, the IEP recommended a 6 to 1 to 1 small classroom setting, as well as many hours per week of individualized services, including speech therapy and occupational therapy, and additional supports such as small group speech, speech therapy sessions. The recommendations in the IEP did not represent a major deviation from what the student had at the private school where she was making substantial progress. And focusing on the IEP itself, the panel's right that the only challenges made to the IEP on this appeal are with respect to the classroom staffing ratio, 6 to 1 to 1 versus 8 to 1 to 3, and whether it was appropriate for the IEP not to recommend the specific educational methodology that the parents now argue for, but instead to leave it to the student. And on those two points, the student teacher ratio question and the recommendation of a particular educational methodology, the SRO issued a cogent, well-reasoned, and well-supported decision addressing those issues, and he concluded that the IEP was indeed reasonably calculated to provide the student with an opportunity for meaningful and appropriate educational progress. On the question of educational methodology, the SRO looked at the student's needs, looked at the IEP's goals, and based upon his experience and expertise, he explicitly rejected the argument that this particular methodology was needed to implement the IEP's goals here. He also recognized that there was... The record does show that the child did well with this methodology and that nothing else had worked? Well, that's not precisely right, Your Honor, because what the SRO did acknowledge is that, you know, looking outside the testimony of, you know, what are interested parties here, there was an uncontroverted psychological report from a party with no interest in this ABA methodology provided meaningful progress with the student here. Did the CSE review that report in developing the IEP? Well, Your Honor, Judge Chin is right that it's not clear at all what's precisely before the CSE. What? Judge Chin was right with his question that it's not clear what was before the CSE here. The psychologist's testimony was that he recalled reviewing the private school report, so there's no question that the private school report was there, but the only questions that were asked of him were, did the DOE do another evaluation that year? You mentioned that psychological report from 2010. Yes. It's unclear to me that that was considered by the CSE. Am I right about that? That's right. It's not clear that it was considered. What is clear is that in trying to show that there was a clear consensus on this question, the parents are the ones who submitted that report and others to the IHO and the SRO, so they cannot now say the SRO should not have considered these reports. They were the ones who, realizing that they didn't have the evidence they needed to show is that there was no consensus at all about the student needing this one particular methodology. You know, it's very telling. If you look at page 372 of the record, which was the parent's petition to the SRO, they argue there that the student needed floor time or something similar. They don't say he needed just floor time full stop, and I think that is sort of a tacit concession that they even recognized before the CSO and advocated before the CSO that it wasn't floor time and only floor time that worked. And so based on this evidence, including the report saying ABA worked, the SRO properly determined, based on his education and experience, that this student did not need this one particular methodology to make progress. You know, the RB case, which was before Judge Droney, is really on point here. That's a case where, like here, the student attended the same school that was here. The IEP, again, copied almost verbatim the goals from that private school report. The parent there argued it was inappropriate to copy the goals, but not to mandate this particular methodology, just like this case. District Court rejected that argument largely because, just like here, there was evidence in the record that the student was able to make appropriate progress under the ABA methodology. And this court affirms finding that the SRO's decision was well-reasoned and well-supported, just like the SRO's decision was here. The parents did not even discuss or try to distinguish that case in their reply brief, even though it's directly on point. So because we have an SRO decision that's well-reasoned and well-supported on this issue, it's entitled to substantial deference. The same is true for the SRO's analysis of the class size and the staffing ratio. Here, the IEP recommended a 6-to-1-to-1 setting, which is at most six students, one classroom teacher, and at least one paraprofessional. The SRO explained that the 6-to-1-to-1 classrooms are designed for students with highly intensive needs who require a high degree of individualized attention and intervention. So the notion that the parents are suggesting that 8-to-1-to-3 provides tons of individualized one-on-one attention, while 6-to-1 does not, has no basis in the record. In fact, when the parents visited the placement school here, he saw two students each getting one-on-one attention and four students working independently. There's no doubt that here, both in the 6-to-1-to-1 classroom and with respect to the additional one-on-one therapy sessions, the student was going to get ample individualized attention. And the SRO, based on his experience and expertise, based on his awareness of how the 6-to-1-to-1 classrooms function and what they're designed to do, found that that classroom would meet the student's needs here. One particularly compelling piece of evidence that the SRO relied on was a different psychological report, again, presented by the parents to the SRO, that had been written after the student had been in a 6-to-1-to-1 DOE classroom for over a year. The psychologists there recognized that the student was at a DOE school, the psychologists even discussed the services provided at the DOE school, and concluded that the student should, quote, continue to attend a small and highly structured academic environment. Nothing from the parents' witnesses contradicted the conclusion that a 6-to-1-to-1 classroom setting would be appropriate for the student. Rather, we have teachers in the private school who are saying that 8-to-1-to-3 would be more appropriate or preferable, and that's not the legal test here. Rowley makes clear that as much as we all want to provide the absolute best for our children, what we need is what's appropriate for the child and reasonably calculated to provide meaningful and appropriate educational progress. On this record, there's simply no basis for disturbing the SRO's sound determination that a 6-to-1-to-1 classroom here is going to meet that standard. The parents make a couple arguments as to why there's no deference warranty here to the SRO. The first is that the SRO relied on the documents that the parents themselves provided to the SRO. I think that we have already covered that at length. Their second argument is that there's a clear consensus as to what the student needed. I think that the record does not bear that out. The AM decision from this court, which was also before Judge Droney, clearly sets forth the sort of evidence that you need for a clear consensus. And in that case, there were four different experts, all who said things like the student needed ABA methodology or ABA methodology was imperative. And that sort of language, that sort of mandatory language is found nowhere in the record here. And when we pointed that out in our brief, the parents came back with nothing in reply pointing to such language in the record because it does not exist. So what they're trying to do is to cobble together a clear consensus where there is none. And what there is instead is there's ample evidence showing differing opinions as to both the methodology that would enable the student to progress and the appropriate classroom ratio. I mentioned some of these already. We have the psychological report noting progress under the ABA. We have the parents arguing in their own papers for floor time or a similar approach. We have the psychological report when the student was in the 6-1-1 classroom recommending that the student continue in such a setting. We have a prior SRO decision at 106-107 where a teacher testifies as to progress made in the 6-1-1 classroom. And we have the parents' own witnesses declining to say the student needs these things to progress, but instead saying that it's preferable or more appropriate. Finally, I'll just briefly address the placement issue. Almost all of the things that the parents are complaining about with respect to the school placement are things that are not in the IEP. And under the MO decision, you cannot bootstrap or backdoor in complaints about the placement in order to challenge the IEP. I think the law is clear on that point. I think likewise under RB and under this court's precedence in both MO and EH, it's clear that an IEP is not incorporating a methodology unless the methodology is needed to implement the IEP. And here, the SRO explicitly considered that issue and determined that it did not. Under these circumstances, we have a very well-reasoned, well-supported decision from the SRO that's entitled to deference, and this court should affirm. Thank you. Thank you. We'll hear the rebuttal. Yes, Your Honor. I would just want to point out for beginners where, to start, when the DOE is, the report that the DOE is referring to where it said that the child should remain in a similar type of placement noted at that time she was, although she was in a 6 to 1 to 1 placement, she also had a 1 to 1 paraprofessional assigned specifically to her. So again, she was essentially in a classroom with either 1 to 1 attention or a 2 to 1 adult to student ratio. Also, there was some talk about when the parent visited the school that the DOE recommended about how the children were being treated. The only testimony on this issue was from the parent. It was unrebutted. The DOE could have brought somebody here and rebut the parent's testimony. And his testimony was that when he did visit the school, he did see two children getting individual attention, and the other four seemed to be left alone in their own worlds and really weren't doing much of anything, not interacting with one another, not doing any work. Nothing else was going on from what he said. In terms of the report that the DOE referred to that says it's uncontroverted in ABA work, that was a report from 2009. There was never any argument in the case below or prior to coming here that ABA was offered. The only talk about methodology from the DOE was either we don't put methodology in an IEP, which Judge Torres found outright to be an error on the part of the DOE, and the talk about DIR from the parents. That report that talks about ABA was from 2009. Subsequent to that, for the 2009 to 10 and 2010 to 11 school years, the child was in a DOE school where she had the DIR taken away from her, and she did not make any progress. The testimony that's cited in the prior SRO's decision is just a summary of a teacher's testimony. The SRO neither credited nor discredited it. The only reason that that SRO decision was submitted into evidence is because we were required to, in order to get the DOE to agree to honor the child's hearing, we would submit that the prior teacher's testimony, because she wasn't cross-examined in this hearing and because the current hearing officer and the SRO did not have an opportunity to assess her credibility, is not something that would be relevant to this hearing. Again, Judge Torres found that the IEP did infer that the DIR methodology should be used with this student, and there was no evidence that said that the DIR methodology was going to be employed at PS 369, and if we are just going to stick to the IEP, if the IEP says that DIR is necessary to be used, the child was only offered a two-to-one student, sorry, a three-to-one teacher-to-student, student-to-teacher ratio at 369, whereas all of the testimony said that she would need two-to-one in order for DIR to be implemented. So regardless of the methodologies being used at the DOE's offered placement school, it seems that there was no way that she could have been employed at PS 369. Thank you. We'll reserve this issue.